Jahan Sagafi (Cal. Bar No. 224887)
Relic Sun (Cal. Bar No. 306701)
Molly Frandsen (Cal. Bar No. 320094)
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA  94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: jsagafi@outtengolden.com
E-Mail: rsun@outtengolden.com
E-Mail: mfrandsen@outtengolden.com

Steven M. Tindall (Cal. Bar No. 187862)
Aaron Blumenthal (Cal. Bar No. 310605)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: 510-350-9700
Fascimile: 510-350-9701
E-Mail: smt@classlawgroup.com
E-Mail: ab@classlawgroup.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R. Harriman,<br><br>                    Plaintiff,<br><br>          v.<br><br>DoorDash, Inc.,<br><br>                    Defendant. | Case No. 19-cv-6411<br><br>**COMPLAINT**<br><br><br>DEMAND FOR JURY TRIAL |

**INTRODUCTION**

1. Under California law, Defendant DoorDash, Inc., has misclassified most of its workforce as "independent contractors."

2. After accounting for business expenses, Plaintiff Harriman did not make money as a DoorDash delivery driver.  If he were properly classified as an "employee," Mr. Harriman would have earned over $17 per hour ($12 per hour in minimum wage and over $5 per hour in tips).

3. In 2018, the California Supreme Court adopted what it described as an "exceptionally broad" test for whether a worker must be classified as an "employee" rather than an independent contractor.  The test "presumptively considers all workers to be employees" and imposes a high burden on the hiring entity to prove that its workers are actually "independent contractors." *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal.5th 903, 956-57 (2018).

4. The Court said it adopted the broadest possible test because California's "[w]age and hour statutes and wage orders" were designed to protect "individual workers" who "generally possess less bargaining power than a hiring business" and may be forced to "accept work for substandard wages or working conditions" to ensure "their families' survival."  The Court noted that the "basic objective" of California labor law is to "ensure that such workers are provided at least the minimal wages and working conditions that are necessary to enable them to obtain a subsistence standard of living and to protect [their] health and welfare."

5. Even though California law and federal law require DoorDash drivers to be classified as "employees" and receive the rights and protections California employees and American employees get, DoorDash continues to willfully misclassify them as independent contractors, to reap the benefit of their work and maximize its profit.

6. DoorDash's misclassification of its workforce causes many harms to Mr. Harriman and his fellow "Dashers" (the term DoorDash uses for its delivery drivers).  This misclassification depresses Dashers' wages, forcing many to work multiple jobs to make ends meet. Almost 80% of Americans now live paycheck to paycheck, a trend that UC Berkeley economist Robert Reich blames on "[t]he rise of 'independent contractors,'" which he calls "the most significant legal trend in the American workforce – contributing directly to low pay,

irregular hours, and job insecurity."

7. As an "employee," Plaintiff Rocco Harriman is entitled to all the benefits and protections afforded by federal and California labor law—including minimum wage and reimbursement of business expenses.

8. Plaintiff now brings this action to recover from DoorDash what Plaintiff is rightfully owed under California and federal law.

<u>**JURISDICTION AND VENUE**</u>

9. This court has jurisdiction pursuant to 28 U.S. Code § 1331, and 28 U.S. Code § 1367, because this action involves a federal question under the Fair Labor Standards Act.

10. Venue is proper in the Northern District of California because a substantial part of the events or omissions giving rise to the claims occurred within this District, and Defendant is headquartered in this District.

<u>**INTRADISTRICT ASSIGNMENT**</u>

11. Pursuant to N.D. Cal. Local Rules 3-2(c) and (d), intradistrict assignment to the San Francisco Division is proper because a substantial part of the events which give rise to the claims asserted herein occurred in San Francisco County.

<u>**PARTIES**</u>

I.    <u>**Plaintiff**</u>

12. Plaintiff Rocco Harriman is a resident and citizen of California.  He resides in Wildomar, California.

13. Since September 8, 2019, he has worked as a delivery driver for DoorDash in California.

14. On September 18, 2019, Mr. Harriman exercised the option to opt out of DoorDash's arbitration requirement by mailing DoorDash the required letter indicating his intent to do so.

II.   <u>**DoorDash**</u>

15. DoorDash, Inc. ("DoorDash"), is incorporated under Delaware law and is headquartered at 901 Market St. Ste 600, San Francisco, CA 94103.

**FACTUAL ALLEGATIONS**

**I.    DoorDash's Business Uses Dashers to Deliver Food.**

16. DoorDash provides its customers with an on-demand food delivery service through its mobile phone application (the "DoorDash App"). Customers can use the DoorDash App to order food from various restaurants.

17. To deliver this food to its customers, DoorDash maintains a workforce of over 300,000 delivery drivers.

18. Applicants for a delivery driver position at DoorDash must pass a background and vehicle check.  If approved, drivers must download DoorDash's companion application for its delivery drivers, the "Dasher App." DoorDash uses the term "Dasher" to refer to its drivers.

19. Through the Dasher App, DoorDash assign orders to its drivers.

20. When filling a typical order, drivers must drive to the assigned restaurant; find a parking spot; notify DoorDash that they have arrived; pick up the food if it's ready or wait to pick it up until the restaurant finishes preparing it; pay for the food using a special credit card provided by DoorDash (the "Red Card"); notify DoorDash that they have picked up the food; drive to the customer's location; find a parking spot; follow any specific delivery instructions provided by DoorDash; deliver the food to the customer; and notify DoorDash that the food has been delivered.

21. Drivers who fail to follow DoorDash's precise instructions can be terminated.

**II.    DoorDash Uses "Metrics" to Control How Drivers Perform the Work.**

22. DoorDash measures drivers on four "metrics": (1) "On Time" Deliveries – that is, the percentage of orders that were delivered on or before the delivery time provided to the customer; (2) Average Customer Rating – a rating of the Dasher's performance from 1 to 5 stars, which customers fill out after receiving their orders, (3) Completion Rate – percentage of orders that were successfully delivered; and (4) Acceptance Rate – percentage of order opportunities that the Dasher accepts.

23. Dashers often worry about their metrics, because low metrics can harm their opportunities to earn money and can be grounds for termination

24. Dashers with low metrics are terminated.  For example, DoorDash bans drivers from the Dasher App if the driver's Average Customer Rating falls below 4.2 stars.

25. These star ratings are used primarily for punishment.  Customers cannot use the ratings to select which driver they want.

26. The metrics also affect the quality of assignments that Dashers are eligible to receive. For example, Dashers with low metrics are generally not eligible to receive "Drive" orders, which typically consist of large catering orders or grocery deliveries.

**III.    DoorDash Imposes Strict Delivery Requirements on Drivers.**

27. DoorDash drivers must deliver the food on a tight delivery schedule or face consequences.

28. For each delivery, DoorDash provides the customer with the exact time that the Dasher is expected to arrive at the restaurant and the exact time the Dasher should arrive at the customer's location.  DoorDash also provides the customer with a map showing the Dasher's precise location at every moment.

29. When a Dasher falls even slightly behind schedule, they not only hurt their "On Time" Delivery statistics, but they also risk receiving a bad customer rating.  Customers will often leave a 1-star rating if an order is late, even if the tardiness is not the driver's fault. Customers generally cannot distinguish between delays caused by the driver, the restaurant, or DoorDash itself.

30. Dashers can hurt their "metrics" not only by delivering too slowly, but also by trying to accept only plum assignments.

31. When DoorDash assigns an order to a Dasher, the Dasher has a brief period during which they can decline the order.  DoorDash provides Dashers with an estimate of the amount of money they can receive and the driving distance.

32. Dashers who try to accept only high-paying or low-distance orders face termination. According to DoorDash's "Deactivation Policy," drivers with an "extremely low" Acceptance Rate may be terminated (without defining "extremely low").

33. DoorDash also makes drivers ineligible for incentive pay if their Acceptance Rate is

too low.  For example, Dashers cannot receive "Peak Pay" (a bonus for delivering orders during periods of high demand) if they maintain too low an Acceptance Rate.

**IV.    DoorDash's Compensation System**

34. *Forbes* describes DoorDash's payment methodology as "complex" and says it results in "understandable" confusion among DoorDash delivery drivers.[1]

35. According to DoorDash, it uses two different methodologies to calculate drivers' pay.

36. The first methodology DoorDash calls the "Guaranteed Minimum" methodology.

37. Before a Dasher accepts an order, DoorDash shows the Dasher a guaranteed amount that they will earn if they complete the order:



38. Under the "Guaranteed Minimum" methodology, the Dasher's pay would equal the guaranteed amount plus any incentive pay.

---

[1] Biz Carson, *DoorDash Will Tweak Driver Earnings But Sticks To Its Controversial Tipping Policy After Review*, Forbes (June 27, 2019).

39. Take, for example, an order with guaranteed earnings of $10 and incentive pay of $2 for delivering during peak hours:

| Guaranteed Minimum Methodology | | |
|---|---|---|
| Guaranteed Amount + | Incentive Pay = | Dasher Pay |
| $10 | $2 | $12 |

40. DoorDash also calculates Dasher pay using a second methodology, which only becomes relevant if the customer leaves a tip.

41. Under the second methodology ("Tips Methodology"), the total owed to the Dasher would equal the tip, plus DoorDash's "Base Pay" (always $1), plus incentive pay.

42. Take, for example, the same order as above (with $10 guaranteed minimum pay and $2 incentive pay), and assume the customer left a $5 tip:

| Tips Methodology | | | |
|---|---|---|---|
| Base Pay + | Tip + | Incentive Pay = | Dasher Pay |
| $1 | $5 | $2 | $8 |

43. In the above example, the Dasher's pay under the Guaranteed Minimum Methodology would be $12 and under the Tips Methodology would be $8.

44. DoorDash pays the Dasher the higher of the two, or $12.  As a result, DoorDash—rather than the Dasher—keeps the customer's $5 tip.

45. Instead of going to the driver, the tip goes towards defraying DoorDash's labor costs, by helping pay for the "Guaranteed Minimum" amount.

46. On information and belief, Plaintiff alleges that only 15% of the time does DoorDash bear the full cost of paying the "Guaranteed Minimum."[2]

## V.   DoorDash Drivers Are "Employees" under California Law.

47. In *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal.5th 903, 956-57 (2018), the California Supreme Court adopted the "ABC test" for determining whether workers are misclassified as independent contractors.  The Court said that the ABC test "presumptively considers all workers to be employees and permits workers to be classified as independent contractors only if the hiring business demonstrates that the worker in question satisfies *each* of three conditions:

> (A)   that the worker is free from the control and direction of the hirer in connection with the performance of the work… *and*
>
> (B)   that the worker performs work that is outside the usual course of the hiring entity's business; *and*
>
> (C)   that the worker is customarily engaged in an independently established … business of the same nature as that involved in the work performed."

*Id.* (emphasis in original).

### A.   Dashers Are Not Free from DoorDash's Control.

48. DoorDash maintains uniform policies and terms of service with which all Dashers must comply.  Failure to comply can result in immediate deactivation from the Dasher App.

49. DoorDash assigns orders to its drivers on a take-it-or-leave-it basis. Drivers are not given a list of available orders from which to choose.

50. DoorDash unilaterally determines how much to pay Dashers for each delivery. Dashers have no ability to set their own rates.

51. Before they accept an order, Dashers are not told how long they will have to wait at the restaurant, even though DoorDash has already calculated a "food prep duration" for the order (based on historical data for that restaurant).[3]

---

[2] *See* Sean Captain, *DoorDash reveals how much it relies on customer tips to pay its workers,* Fast Company (Feb. 12, 2019), https://tinyurl.com/fast-co-doordash.
[3] Raghav Ramesh (Machine Learning Engineer at DoorDash), *How DoorDash Leverages AI in its on-demand Logistics Engine* (May 2018), at 18.

52. If a Dasher declines an order, they don't know if they will receive another. But they *do* know they will suffer consequences.  If a Dasher tries to decline an order, the app says, "Are you sure you want to decline this order?," and warns them about the consequences of doing so.

53. Dashers who decline orders face the loss of incentive pay and other delivery opportunities. Dashers who decline too many orders face termination.

54. During the course of a delivery, Dashers must follow all instructions in the Dasher App, including specific instructions for picking up the food, paying for it, and delivering it to the customer.  They have no freedom to deviate.

55. DoorDash enforces a strict delivery schedule.  Failure to deliver an order by the specified time will hurt Dashers' "metrics."

56. DoorDash scrutinizes drivers' "metrics" and takes away opportunities or terminates drivers whose "metrics" fall too low.

57. DoorDash uses these "metrics" as a means to exert its control over drivers.

58. DoorDash has the power to discipline drivers, including by denying them access to certain types of work.  And DoorDash has the power to shut down drivers' access to the Dasher App for myriad reasons, thus preventing them from obtaining and responding to delivery requests.

**B.      Dashers' Work Is Not Outside DoorDash's "Usual Course of Business."**

59. DoorDash's usual course of business is food delivery.  DoorDash markets itself as a food delivery service.  DoorDash's home page is titled "DoorDash Food Delivery," and its homepage's description – which appears in search results – says, "Get breakfast, lunch, dinner and more delivered from your favorite restaurants right to your doorstep with one easy click." DoorDash wants people to think of it as a delivery service.

60. Dashers are central to DoorDash's business.  Dashers provide the service that DoorDash sells to the public.  DoorDash earns money by providing its customers with food delivery – a service that is wholly dependent on Dashers.  DoorDash has created a fully integrated solution through which customers can order directly from the restaurant and have their order delivered for a specified delivery fee.  Customers cannot select their Dasher (for example,

based on their ratings, qualities, experience, or other factors). And Dashers cannot select their desired customers (for example, based on how much the customer is willing to pay or the distance to the customer's location).

61. To determine DoorDash's "usual course of business," there are no material issues of fact to be resolved. As a result, Plaintiff is entitled to judgment as a matter of law.

**C.    DoorDash Cannot Meet Its Burden to Show that Dashers Are "Customarily Engaged" in a Separate Delivery Business.**

62. Dashers lack business autonomy. Dashers are not engaged in an independently established business. Dashers cannot provide DoorDash delivery services without the DoorDash App. Dashers are dependent on DoorDash to identify deliveries and customers for them.

63. Dashers cannot advertise any product offering to customers or compete for customers' business. Customers cannot even select their driver. DoorDash does not, for example, provide customers with a list of available drivers and allow customers to choose a driver based on job qualifications, star ratings, delivery speed, or other metrics.

64. In fact, DoorDash impedes customers' and drivers' ability to contract directly with each other. During a delivery, DoorDash obscures the customer's and Dasher's full name and contact information. A customer cannot place a favored driver on retainer. And Dashers cannot solicit repeat business from well-paying customers.

65. Dashers are not engaged in a specialized delivery trade. Dashers do not need to possess any particular skills other than those required to obtain a driver's license.

66. DoorDash does not verify, when Dashers apply for the job, that they operate a separate delivery business. Plaintiff does not operate a separate delivery business.

67. DoorDash requires Dashers to apply for the job using their name and Social Security number. There is no option for Dashers to contract with DoorDash via a business entity owned by the Dasher. Dashers may not hire their own employees to assist them in providing services for DoorDash.

68. By working for DoorDash, Dashers have not independently made the decision to go into business for themselves. DoorDash has unilaterally dictated that Dashers are independent

contractors while precluding them from taking the usual steps toward promoting and establishing an independent business, such as forming business relationships with DoorDash customers or otherwise promoting their services to the public.

## VI.   Misclassification of Mr. Harriman and Other DoorDash Drivers Creates Substantial Harm.

69. For the reasons stated above, DoorDash cannot meet its burden to prove that Plaintiff was properly classified as an independent contractor, as opposed to an employee. Specifically, DoorDash cannot satisfy all three prongs of California's ABC test, including prong B – that Plaintiff performed "work that is outside the usual course of [DoorDash's] business." *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal.5th 903, 956-57 (2018).

70. For this reason, Plaintiff should have been treated as an "employee" under Cal. Industrial Welfare Commission Wage Order No. 9-2001 ("Wage Order 9") and the California Labor Code, rather than as an "independent contractor."

71. DoorDash's misclassification of Plaintiff as an independent contractor harms not only Plaintiff but also other Dashers, other workers in the gig economy who are similarly misclassified, workers generally, and the public.

72. DoorDash's misclassification harms Plaintiff by depriving Plaintiff of the rights, benefits, and protections that Plaintiff is entitled to under Wage Order 9 and the Labor Code as an employee of DoorDash.  DoorDash does not pay Plaintiff the normal amounts payable to employees, such as minimum wage and reimbursements for gas, mileage, insurance, and other necessary costs related to making deliveries for DoorDash.  Plaintiff spends considerable time braving dangerous traffic conditions to deliver food to DoorDash customers as quickly as possible, delivery after delivery, day after day.  This is highly lucrative work for DoorDash but perilous for Dashers.  A substantial percentage of delivery personnel have been physically injured on the job, and at least four have been killed performing delivery work for DoorDash and similar companies.  DoorDash's misclassification of Plaintiff deprived Plaintiff of any right to workers compensation insurance and paid sick or disability leave to recover from and provide compensation for the injuries that Plaintiff risks by performing this work for DoorDash.

DoorDash's misclassification decision harms other Dashers in the same way.

73. Furthermore, DoorDash's misclassification of Dashers harms other workers in similar positions, such as drivers, cyclists, and deliverers who are misclassified as independent contractors by other delivery and rideshare companies, because it shapes the labor market, drives down wages and undermines workers' ability to make use of the important protections of California law, in contravention of Wage Order 9 and the California Supreme Court's clear instruction in *Dynamex*. *See Dynamex*, 4 Cal. 5th at 913.

74. DoorDash's misclassification also harms competitors that *do* play by the rules. "Employers who misclassify their workers avoid many of the costs of employment and thereby gain an unfair market advantage over their law-abiding competitors."[4] For example, San Francisco's Yellow cab company, which hired drivers as "employees," went bankrupt in 2016, facing unfair competition from Uber and Lyft.

**VII.   DoorDash Owes Plaintiff, Its Employee, A Substantial Sum for Minimum Wage and Other Compensation.**

75. <u>Minimum Wage.</u>  DoorDash failed to pay Plaintiff at least the minimum wage for all hours worked.  Plaintiff did not earn any money per hour working for DoorDash, after accounting for mileage costs.  California minimum wage for 2019 is $12 per hour.  Federal minimum wage under the Fair Labor Standards Act is $7.25 per hour.

76. DoorDash failed to pay Plaintiff for "on-call" time.  DoorDash suffered or permitted Plaintiff to log on to the DoorDash App and place himself "on-call" to receive orders. Plaintiff remained ready, at a moment's notice, to go pick up an assigned order.

77. But DoorDash failed to pay him for time he spent waiting for orders.  Sometimes, Plaintiff waited "on-call" for multiple hours without receiving any order opportunities.  Also, DoorDash would sometimes instruct Plaintiff to drive to a different, specified waiting area with higher order volume.  DoorDash did not pay Plaintiff for the time he spent following DoorDash's instruction to drive elsewhere.

---

[4] Christopher Buscaglia, *Crafting a Legislative Solution to the Economic Harm of Employee Misclassification*, 9 U.C. Davis Bus. L.J. 111, 112 (2009).

78. Rather than pay the minimum wage for all hours worked, DoorDash limited Plaintiff's pay to a piece rate for each delivery.  Even limiting the calculation of minimum wage to the hours Plaintiff was en route to making a delivery, DoorDash failed to pay Plaintiff a minimum wage for all hours worked.

79. Expense Reimbursement.  Plaintiff was not reimbursed for necessary business expenses, including car insurance, license fees, inspection fees, tolls, and fines, maintenance and repairs, gasoline, and cell phone service to use the Dasher App.

80. Willfulness.  Although Plaintiff was at all times an employee of DoorDash, DoorDash willfully misclassified Plaintiff as an independent contractor despite that: (A) Plaintiff was not free from the control and direction of DoorDash in the performance of his work; (B) Plaintiff performed work within the usual course of DoorDash's business; and (C) Plaintiff was not engaged in an independently established delivery business.  DoorDash knew or should have known that Plaintiff was misclassified under California labor law.

81. Meal and Rest Breaks.  Plaintiff was frequently denied meal and rest breaks to which Plaintiff was entitled.  Plaintiff was not relieved of duty in order to take a ten-minute rest break for every four hours Plaintiff worked, or a thirty-minute uninterrupted meal break for every five hours Plaintiff worked.  DoorDash did not compensate Plaintiff for meal and rest breaks that Plaintiff missed or that were interrupted with work-related duties.

82. Misappropriation of Tips.  DoorDash often keeps drivers' tips in order to defray its costs.  This violates Cal. Labor Code § 351: "No employer or agent shall . . . deduct any amount from wages due an employee on account of a gratuity[.]" Under California law, DoorDash must pay its workers all tips they earn, in addition to minimum wage.

83. Further, DoorDash misappropriated drivers' tips through DoorDash's "Drive" program.  Under this program, certain restaurants, caterers, and grocery chains have a deal with DoorDash, under which they can request Dashers to make a particular delivery for them.

84. The restaurant, caterer, or grocer must pay the Dasher.

85. In turn, the Dasher must collect payment from the customer.  The customer's payment goes in its entirety to the restaurant, caterer, or grocer.  DoorDash *allows* but does not

require the restaurant, caterer, or grocer to pass on tips to the driver.  Certain restaurants and grocery chains, such as Chipotle and Walmart, are notorious for not passing on tips to their DoorDash drivers.

86. Late Payment and Waiting Time Penalties.  As a result of these violations, DoorDash did not pay Plaintiff all wages due at the close of each pay period.

87. Inaccurate Wage Statements.  DoorDash also failed to provide Plaintiff with accurate itemized wage statements showing, among other things, Plaintiff's (a) gross wages, (b) total hours, (c) deductions, (d) net wages, and (e) hours worked at applicable hourly rates.

**FIRST CLAIM FOR RELIEF**
**(Minimum Wage Claim, under the Fair Labor Standards Act, 29 U.S.C. § 206)**

88. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

89. At all relevant times, DoorDash has been an employer and Plaintiff has been an employee under California and federal law, entitled to the protections of the Fair Labor Standards Act.

90. The foregoing conduct, as alleged, constitutes a violation of 29 U.S.C. § 206, which protects Plaintiff's right to earn a minimum wage and provides for damages and punishment for violations of that right.

91. In particular, although the federal minimum wage is $7.25, Plaintiff has earned less than the minimum wage in certain weeks due to DoorDash's low pay, coupled with the significant deductions from his pay that DoorDash requires him to make for expenses (e.g., gasoline, car insurance, car financing, maintenance, and cell phone usage).  These expenses have resulted in hourly rates below $7.25 based on the hours that Plaintiff has worked, the expenses he has incurred (e.g., the miles he has driven), and the wages that DoorDash has paid him.  Further, although DoorDash has suffered or permitted Plaintiff to log on to the DoorDash App and make himself available to make deliveries, DoorDash has failed to pay him while he was logged on but not picking up or making a delivery.  In this way, DoorDash has failed to pay the minimum wage for all hours actually worked and instead has limited Plaintiff's pay to a piece rate for each

delivery.

92. Even using DoorDash's own measurement of hours worked, Plaintiff did not earn minimum wage for any work week, after accounting for business expenses.

93. For example, the Dasher App reported that from September 9, 2019, to September 15, 2019 ("Week One"), Plaintiff was paid $139.25 and worked 12.81 hours; and from September 16, 2019, to September 22, 2019 ("Week Two"), Plaintiff was paid $84.69 and worked 7.55 hours.

*Earnings Reported by Dasher App*



94. Plaintiff estimates that he has driven approximately 30 miles each hour while working at DoorDash. Based on his estimate of miles driven, Plaintiff drove approximately 384.3 miles and approximately 226.5 miles for DoorDash during Weeks One and Two, respectively. At the 2019 IRS mileage reimbursement rate of $0.58 per mile, Plaintiff incurred approximately $222.89 and $131.37 in driving expenses during Weeks One and Two, respectively. Thus, accounting for mileage costs, Plaintiff's net hourly income was less than the federal minimum wage (i.e., ( $139.25 – $222.89 ) ÷ 12.81 hours in Week One and ( $84.69 – $131.37 ) ÷ 7.55 hours in Week Two). (On information and belief, DoorDash collects and maintains precise data regarding the miles Plaintiff drives and the number of minutes during which he performs various tasks while working for DoorDash.)

95. Plaintiff's hourly wages for this period were even lower after accounting for other business expenses and "on-call" time, which Plaintiff Harriman spent driving to a waiting area ("Hot Spot") designated by DoorDash and waiting for DoorDash to assign him an order. Plaintiff Harriman sometimes spent hours engaged by DoorDash to wait to be assigned an order. Plaintiff is informed and believes that more specific information about how long he spent "on-call" is within DoorDash's custody or control, because the Dasher App receives that information.

96. Plaintiff could not take care of personal business during this "on-call" time because he had to be ready, at a moment's notice, to accept an order or risk lowering his metrics and potentially being terminated from the App, and because he had to wait at the specified Hot Spot near popular restaurants that DoorDash predicted would receive an order soon.  Plaintiff was not able to leave and was not near his home, so he could not do personal errands.

97. Although Plaintiff periodically did not earn at least the minimum wage, DoorDash had a policy and practice of failing and refusing to pay him minimum wage for all hours worked and thus violated and continues to violate the above-referenced minimum wage protections.

98. Plaintiff seeks the amount of the respective unpaid wages owed him, liquidated damages, attorneys' fees and costs pursuant to 29 U.S.C. §§ 201 *et seq*. and such other legal and equitable relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (Minimum Wage, Cal. Labor Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, and Cal. Wage Order No. 9-2001)

99. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

100. At all relevant times, DoorDash has been an employer and Plaintiff has been an employee under California law entitled to the protections of the California Labor Code and Wage Order 9.

101. The foregoing conduct, as alleged, also constitutes a violation of the California Labor Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, 1199, and Wage Order 9, which similarly protect Plaintiff's right to earn a minimum wage and provide for damages and punishment for

violations of that right.

102. DoorDash failed to pay Plaintiff the applicable minimum wage for all hours worked.

103. As a result of this failure, Plaintiff is entitled to recover his unpaid wages, interest, liquidated damages, costs, and attorneys' fees.

**THIRD CLAIM FOR RELIEF**
**(California Wage Payment Provisions, Cal. Wage Order No. 9-2001, Cal. Labor Code**
**§§ 226(a), 226.3, and 1174(d))**

104. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

105. At all relevant times, DoorDash has been an employer and Plaintiff has been an employee under California law entitled to the protections of the California Labor Code and Wage Order 9.

106. The foregoing conduct, as alleged, constitutes a violation of Labor Code § 226 and Wage Order 9, which provides requirements for properly itemized wage statements.

107. DoorDash's wage statements do not clearly itemize hours worked, an hourly wage, overtime, or earnings in a way that Plaintiff can readily identify whether Plaintiff received all applicable pay for which Plaintiff was eligible.  DoorDash thus violated California Labor Code § 226 and Wage Order 9.

108. The hours listed in the Dasher App are, furthermore, inaccurate.  For example, DoorDash does not include "on-call" time that Plaintiff spent waiting for DoorDash to assign him an order.

109. At all times relevant herein, DoorDash has failed to maintain accurate records of hours worked by Plaintiff as required under Wage Order 9 and Labor Code § 1174(d).

110. Plaintiff seeks the amounts provided under Wage Order 9 and Labor Code sections 226(e), 226.3, and 1174(d), as well as interest, costs, and attorneys' fees.

**FOURTH CLAIM FOR RELIEF**
**(California Meal and Rest Period Provisions,**
**Cal. Wage Order No. 9-2001; Cal. Labor Code §§ 226.7 & 512)**

111. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

112. At all relevant times, DoorDash has been an employer and Plaintiff has been an employee under California law entitled to the protections of the California Labor Code and Wage Order 9.

113. Plaintiff regularly worked in excess of five-hour shifts without being afforded at least a half-hour meal break in which he was relieved of all duty, as required by Labor Code sections 226.7 and 512 and Wage Order No. 9, Section 11.

114. In addition, Plaintiff regularly worked without being afforded at least one ten-minute rest break, in which Plaintiff was relieved of all duty, per four hours of work performed or major fraction thereof, as required by Labor Code section 226.7 and Wage Order 9, Section 12.

115. As a result of DoorDash's failure to afford proper meal periods, it is liable to Plaintiff for one hour of additional pay at the regular rate of compensation for each workday that the proper meal periods were not provided, pursuant to Labor Code section 226.7 and Wage Order No. 9.

116. As a result of DoorDash's failure to afford proper rest periods, it is liable to Plaintiff for one hour of additional pay at the regular rate of compensation for each workday that the proper rest periods were not provided, pursuant to Labor Code § 226.7 and Wage Order No. 9, interest, costs, and attorneys' fees.

**FIFTH CLAIM FOR RELIEF**
**(Business Expenses, Cal. Labor Code § 2802; Cal. Wage Order No. 9-2001)**

117. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

118. At all relevant times, DoorDash has been an employer and Plaintiff has been an employee under California law entitled to the protections of the California Labor Code and Wage

Order 9.

119. Labor Code § 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."

120. DoorDash failed to indemnify and reimburse Plaintiff for necessary expenditures he incurred as a direct result of the duties he performed for its benefit and/or at its direction.

121. Wage Order 9 provides that "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer."

122. DoorDash failed to provide and maintain tools and equipment that Plaintiff required to perform Plaintiff's duties, including a vehicle, gasoline, car insurance, reimbursement for car maintenance, depreciation, and repairs, and cell phone usage.

123. As a result, Plaintiff seeks unreimbursed expenses, penalties, interest, costs incurred, and attorneys' fees pursuant to Labor Code § 2802(b) and Wage Order 9.

**<u>SIXTH CLAIM FOR RELIEF</u>**
**<u>(California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*)</u>**

124. Plaintiff realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

125. At all relevant times, DoorDash has been an employer and Plaintiff has been an employee under California law entitled to the protections of the California Labor Code and Wage Order 9.

126. The foregoing conduct, as alleged, violates the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*.  Section 17200 of the Cal. Bus. & Prof. Code prohibits unfair competition by prohibiting, inter alia, any unlawful or unfair business acts or practices.

127. Within the four years before the filing of this action, DoorDash committed, and continues to commit, acts of unfair competition, as defined by the UCL, by, among other things, engaging in the acts and practices described herein.  DoorDash's conduct as herein alleged has injured Plaintiff by wrongfully denying him of his earned wages, and therefore was substantially

injurious to Plaintiff.

128. DoorDash engaged in unfair competition in violation of the UCL by violating, inter alia, each of the following laws.  Each of these violations constitutes an independent and separate violation of the UCL:

    a.    Wage Order 9;

    b.    Labor Code § 226.8, which makes it unlawful for employers to willfully misclassify workers as independent contractors, and to charge an individual who has been willfully misclassified as an independent contractor a fee, or make any deductions from compensation, for any purpose including for goods, materials, services, licenses, repairs, equipment maintenance, or fines arising from the individual's employment where any of the acts described would have violated the law if the individual had not been misclassified;

    c.    Labor Code §§ 221 and 2802;

    d.    Labor Code §§ 1182.2, 1194, 1194.2, 1197, 1197.1, 1199;

    e.    Labor Code §§ 226, 353, and 1174;

    f.    Labor Code §§ 226.7, 512;

    g.    Labor Code § 2810.5;

    h.    Labor Code §§ 201, 202, 203, 226, 226.7, and 512;

    i.    Labor Code § 351, which makes it unlawful for an employer to deduct any amount from wages due an employee on account of gratuity.

129. DoorDash has not paid Plaintiff all the tips he received from customers, even though he is entitled to these tips, in addition to minimum wage.

130. DoorDash's course of conduct, acts, and practices in violation of the California laws mentioned above constitute a separate and independent violation of the UCL.

131. DoorDash's conduct described herein also violates the policy or spirit of such laws or otherwise significantly threatens or harms competition.

132. DoorDash's conduct is additionally unfair because the harm from the conduct alleged herein vastly outweighs the benefits. DoorDash, for example, misleads customers into

thinking that tips will increase their driver's earnings, when in reality, DoorDash uses the tips to defray its labor costs.

133. As a direct and proximate result of DoorDash's violations of the UCL, Plaintiff lost money or property, including but not limited to wages, expense reimbursements, penalties, and tips owed to Plaintiff.

134. Plaintiff seeks restitution of all expenses, minimum wages, and other wages owed, plus attorneys' fees and costs pursuant to Cal. Code of Civil Procedure § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A.     A declaratory judgment that the practices complained of herein are unlawful and that Plaintiff is an "employee" under California law;

B.     An injunction against DoorDash, its officers, agents, successors, employees, representatives, and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices set forth herein;

C.     Statutory penalties;

D.     An award of damages and restitution to be paid by DoorDash according to proof;

E.     Pre-judgment and post-judgment interest, as provided by law;

F.     Such other injunctive and equitable relief as is just and proper; and

G.     Attorneys' fees, pursuant to §§ 210, 218.5, 226(e), 512, 1194, 1198, 2802, Civil Code of Procedure § 1021.5, and all other bases for fees in the Labor Code.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims alleged herein.

Dated:  October 7, 2019

Respectfully submitted,

By:   _/s/ Jahan C. Sagafi_
       Jahan C. Sagafi

Jahan Sagafi (Cal. Bar No. 224887)
Relic Sun (Cal. Bar No. 306701)
Molly Frandsen (Cal. Bar No. 320094)
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA  94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: jsagafi@outtengolden.com
E-Mail: rsun@outtengolden.com
E-Mail: mfrandsen@outtengolden.com

Steven M. Tindall (Cal. Bar No. 187862)
Aaron Blumenthal (Cal. Bar No. 310605)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: 510-350-9700
Fascimile: 510-350-9701
E-Mail: smt@classlawgroup.com
E-Mail: ab@classlawgroup.com

*Attorneys for Plaintiff*

COMPLAINT